FILED
2025 Oct-29  PM 12:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **RASHON FELTON,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| **v.** } | **Case No.: 2:25-cv-00580-RDP** |
| } | |
| **VROOM AUTOMOTIVE, LLC, et al.,** } | |
| } | |
| **Defendants.** } | |

## <u>MEMORANDUM OPINION</u>

This matter is before the court on the Motions to Dismiss Plaintiff's Second Amended

Complaint filed by Defendants Pentagon Federal Credit Union ("PenFed"), Open Lending, LLC

("Open Lending"), Santander Consumer USA, Inc. ("Santander"), Vroom Automotive, LLC

("Vroom"), AUTOPAY Direct LLC ("AUTOPAY"), and Loss Prevention Services, LLC ("LPS")

(collectively, "Defendants"). (Docs. # 84, 87, 88, 89, 90, 91). The Motions have been fully briefed.

(Docs. # 84-102). After careful review, and for the reasons discussed below, Defendants' Motions

(Docs. # 84, 87, 88, 89, 90, 91) are due to be granted.

## I.    Factual Background[1]

This case arises out of the purchase of a vehicle that was repossessed. Plaintiff, who is

litigating this case *pro se*, alleges that he financed the purchase of a 2016 Honda Civic "through

arrangements involving one or more of the Defendants," including Santander and PenFed (Doc. #

---

[1] In evaluating a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court assumes the factual allegations in the complaint are true and gives the plaintiff the benefit of all reasonable factual inferences. *Hazewood v. Found. Fin. Grp., LLC*, 551 F.3d 1223, 1224 (11th Cir. 2008). Accordingly, the facts set out herein are taken from Plaintiff's Second Amended Complaint (Doc. # 83), and they are assumed true for purposes of ruling on Defendants' motions.

83 at ¶ 14). Plaintiff purchased the Civic from Vroom under a retail installment contract, and Santander provided financing. (*Id.* at ¶ 16). Plaintiff made monthly payments under the contract. (*Id.*). In January 2022, Plaintiff refinanced the Civic through PenFed (*Id.* at ¶ 24, 48), and AUTOPAY coordinated the refinancing transaction. (*Id.* at ¶ 24). Open Lending participated in the refinancing transaction by "evaluating loan risk, guaranteeing the loan, and providing analytics essential to the approval and funding of refinancing." (*Id.* at ¶ 87).

On February 7, 2025, LPS repossessed the vehicle. (*Id.* at ¶ 18). Plaintiff "did not voluntarily surrender the vehicle" and did not receive "prior notice of repossession, opportunity to cure," or "judicial author [*sic*] authorizing repossession." (*Id.* at ¶ 20). Plaintiff "demanded return" of the Civic, and LPS has refused to return the Civic since its repossession. (*Id.* at ¶ 27). Plaintiff alleges that Santander did not timely release its lien on the Civic and that PenFed did not "properly and clearly perfect its new lien," including verifying that Santander's lien had been released before filing its own lien (*Id.* at ¶¶ 25, 51). Plaintiff claims these "conflicting liens contributed to . . . repossession." (*Id.* at ¶ 65)

Plaintiff lists several claims against each Defendant. (*Id.* at ¶¶ 29-114). He asserts these claims against LPS: Count 1 – Wrongful Detention/Replevin, Count 2 – Conversion, and Count 16 – Violation of the Alabama Deceptive Trade Practices Act ("ADTPA"). He asserts these claims against Vroom: Count 3 – Breach of Contract and Count 7 – Violation of ADTPA. He asserts these claims against Santander: Count 4 – Breach of Contract, Count 8 – Violation of ADTPA, and Count 15 – Declaratory Judgment: Lack of Valid Contracts. He asserts these claims against PenFed: Count 5 – Breach of Contract, Count 9 – Violation of ADTPA, Count 11 – UCC Perfection and Title Handling Failures, and Count 14 – Declaratory Judgment: Unenforceability of Promissory Note. He asserts these claims against AUTOPAY: Count 6 – Breach of Contract

and Count 10 – Violation of ADTPA. And, he asserts these claims against Open Lending: Count 12 – Negligence/Wantonness and Count 13 – Failure to Provide Notice of Loan Transfer.

## II.    Procedural Background

Plaintiff initiated this case by filing a complaint against LPS in the Circuit Court of Jefferson County, Alabama. (Doc. # 1-1 at 14). Plaintiff then filed an Amended Complaint that added claims against Defendants Vroom, Santander, PenFed, AUTOPAY, Open Lending, and fraudulently joined Alabama Department of Revenue Motor Vehicle Division.[2] (Doc. #1-1 at 60-74). Open Lending removed the case to this court (Doc. # 1), and Defendants filed motions to dismiss (Docs. # 3, 16, 17, 18, 29, 31). The court terminated Defendants' motions and ordered Plaintiff to file an Amended Complaint. (Doc. # 35). The court's order stated that Plaintiff's "Amended Complaint **SHALL** comply with Federal Rules of Civil Procedure 8(a), 8(d)(1), 10(b), and 11(b)." (*Id.*) (emphasis in original). Plaintiff filed an Amended Complaint on June 13, 2025. (Doc. # 43). Defendants then filed motions to dismiss the Amended Complaint. (Docs. # 54, 55, 56, 57, 58, 59, 60).

The court held a status conference in the case on July 17, 2025. (Doc. # 63). After the status conference, the court gave Plaintiff another opportunity to amend his Amended Complaint, even going so far as having Plaintiff serve Defendants with a copy of the draft second amended complaint before filing it with the court so that Defendants could give Plaintiff feedback on whether the draft second amended complaint complied with the pleading requirements of the Federal Rules. (*Id.* at 2-3). Because Plaintiff was required to file a second amended complaint, the court denied Defendants' motions to dismiss as moot. (*Id.*).

---

[2] The court also dismissed Plaintiff's claims against Defendant Alabama Department of Revenue Motor Vehicle Division with prejudice for fraudulent joinder. (Doc. # 65).

Plaintiff circulated a draft of the Second Amended Complaint to all Defendants, and Defendants gave Plaintiff feedback as required. (Docs. # 83-2, 84-1, 87-1, 88 at ¶ 20, 89 at ¶ 18, 90 at ¶ 17, 91 at ¶ 17). Plaintiff filed his Second Amended Complaint on September 12, 2025. (Doc. # 83). Defendants then filed separate Motions to Dismiss the Second Amended Complaint. (Docs. # 84, 87, 88, 89, 90, 91). Plaintiff responded to each of the motions (Docs. # 92, 93, 94, 95, 96), and Defendants replied to Plaintiff's responses (Docs. # 97, 98, 99, 100, 101, 102).

## III.    Standard of Review

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id*. at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id*. A plausible claim for

relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC,* 413 F. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

The court recognizes that Plaintiff is appearing *pro se*, that filings by *pro se* litigants are to be more leniently construed, and that such litigants are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations and internal quotation marks omitted); *Evans v. Georgia Reg'l Hosp.*, 850 F.3d 1248, 1253 (11th Cir. 2017) (citing *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998)). However, notions of leniency do not excuse a plaintiff from compliance with threshold requirements of the Federal Rules of Civil Procedure. *See Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989). Nor does this leniency require or allow courts "to rewrite an otherwise deficient pleading [by a *pro se* litigant] in order to sustain an action." *GJR Invs., Inc. v. Cty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998).

IV.    **Analysis**

Plaintiff lists several claims against each Defendant. (Doc. # 83 at ¶¶ 29-114). Because each Motion to Dismiss is specific to each defendant, the court addresses each Motion in turn.

A.    **PenFed's Motion to Dismiss (Doc. # 84).**

Plaintiff brought four claims against PenFed: Count 5 – Breach of Contract, Count 9 – Violation of ADTPA, Count 11 – UCC Perfection and Title Handling Failures, and Count 14 – Declaratory Judgment: Unenforceability of Promissory Note. (Doc. # 83 at ¶¶ 48-53, 68-74, 80-85, 99-103). After careful review and for the reasons discussed below, all claims against PenFed are due to be dismissed.

1.    **Count 5 – Breach of Contract is due to be dismissed for failure to state a claim.**

Under Alabama law, the elements of a breach of contract claim are "(1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 105 (Ala. 2002). Plaintiff attached a copy of the PenFed note to the Second Amended Complaint with highlighted portions that he alleges indicate that PenFed "undertook express duties to apply for and provide a Certificate of Title, to ensure proper recordation of its lien, and to take all action necessary to establish, perfect, and maintain a valid security interest." (Doc. # 83 at ¶ 49). PenFed argues that it did not breach any contractual obligation owed to Plaintiff. (Doc. # 84 at 7-9).

Plaintiff is mistaken as to what the highlighted language requires. The highlighted language requires *Plaintiff* to protect PenFed's security interest in the collateral, allows PenFed to register or transfer title to the vehicle, and permits PenFed to take the collateral if Plaintiff is in default. (Doc. # 83-1 at 2). In fact, the court has not found any language in the PenFed note that even arguably creates the duties Plaintiff alleges fell on PenFed. Thus, because Plaintiff has not

adequately alleged PenFed's nonperformance under the note as required by Alabama law, *Reynolds Metals Co.*, 825 So. 2d at 105, Plaintiff has not stated a claim for breach of contract against PenFed.

        **2.**      **Count 9 – Violation of ADTPA is due to be dismissed as a matter of law and for failure to state a claim.**

The ADTPA provides a cause of action for a "consumer." Ala. Code § 8-19-10. A consumer is defined as a person "who buys goods or services for personal, family or household use." Ala. Code § 8-19-3(2). In the statute, "goods" are defined as including but not limited to "any property, tangible or intangible, real, personal, or any combination thereof, and any franchise, license, distributorship, or other similar right, privilege, or interest." Ala. Code § 8-19-3(3). "Services" are defined as "[w]ork, labor, and other services, including but not limited to services furnished in connection with the sale or repair of goods." *Id.* § 8-19-3(7). The ADTPA prohibits, in relevant part, "[e]ngaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce." Ala. Code § 8-19-5. In order to assert a cause of action against PenFed under this statute, Plaintiff's promissory note "must fit within the statute's definition of a good or service." *Deerman v. Fed. Home Loan Mortg. Corp.*, 955 F. Supp. 1393, 1399 (N.D. Ala. 1997), *aff'd sub nom. Deerman v. Fed. Home Loan Mortg.*, 140 F.3d 1043 (11th Cir. 1998). It does not.

The Honorable Sharon L. Blackburn of this court has previously addressed whether mortgage loans fall within the definition a good or service under the ADTPA. *Id.* at 1399-1400. In finding that mortgage loans do not fall within the definition, Judge Blackburn explained:

> Under the [ADTPA], any bank or affiliate of a bank that is regulated by one of a number of agencies is exempt from the provisions of the [ADTPA]. Ala. Code § 8-19-7. Most loans and many, if not most, mortgage loans are made by banks or affiliates of banks that are regulated by one of the listed agencies. Therefore, by virtue of this section, *most loans and mortgages would not be subject to the provisions of the [ADTPA]*. This is a strong indication that the Alabama legislature

> did not intend to include loans and mortgages within the definition of goods or services for purposes of this statute. No court has held that a loan is a good or service under this statute, and this court will not be the first to do so. The court is of the opinion, therefore, that a mortgage loan is not a good or service under the [ADTPA]. As a result, the Deermans do not fall within the definition of consumer under the statute with respect to their mortgage, and they do not have a private right of action under this statute.

*Id.* (emphasis added). The court agrees with this analysis and for the same reasons Judge Blackburn determined that mortgage loans are not goods or services under the ADTPA, this court concludes that a promissory note is not a good or service under the ADTPA. Just as a mortgage lender is not providing a good or service by lending money for the purchase of a home, PenFed is not providing a good or service by providing financing for the purchase of Plaintiff's vehicle. Thus, Plaintiff's ADTPA claim against PenFed is due to be dismissed as a matter of law.

Even if the ADTPA did apply to the transaction at issue here (and, to be clear, it does not), claims under the ADTPA are based in fraud and thus must comply with Rule 9(b)'s pleading with particularity requirement. *Kornegay v. Beretta USA Corp.*, 614 F. Supp. 3d 1029, 1036 (N.D. Ala. 2022). According to the Eleventh Circuit:

> Rule 9(b) is satisfied if the complaint sets forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) the same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud."

*Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997)).

PenFed argues that Plaintiff has not plausibly alleged that it engaged in any deceptive trade practices or otherwise violated the ADTPA as to Plaintiff. (Doc. # 84 at 9-11). The court agrees. Plaintiff alleges that PenFed, "through the Promissory Note and Security Agreement, and communications facilitated by AUTOPAY, represented that the refinance would secure Plaintiff's

rights and that it would perfect its lien in compliance with law and industry standards." (Doc. #83 at ¶ 68). This allegation does not set forth what statements were made (and where), the time and place of each such statement and the person responsible, the content of such statements or the way they mislead Plaintiff, or what PenFed allegedly obtained because of its alleged fraud. *Ziemba*, 256 F.3d at 1202. Thus, because Plaintiff has not satisfied Rule 9(b), he has not stated a claim for violation of ADTPA against PenFed.

Nor has Plaintiff complied with the ADTPA's demand requirement. Under the ADTPA, a plaintiff must communicate a written demand to proposed respondent at least 15 days prior to the filing of any action. Ala. Code § 8-19-10(e); *Holmes v. Behr Process Corp.*, No. 2:15-CV-0454-WMA, 2015 WL 7252662, at *2 (N.D. Ala. Nov. 17, 2015) (finding that a pre-suit demand is "a condition precedent to filing a suit under the ADTPA"). Subsection (e) provides the following exceptions to its demand provision: "The demand requirements of this subsection shall not apply if the prospective respondent does not maintain a place of business or does not keep assets within the state . . . ." § 8-19-10(e). A plaintiff bears the burden of showing that a defendant falls within one of the two exceptions such that no demand is required. *Sheehan v. Bowden*, 572 So. 2d 1211, 1213 (Ala. 1990). Here, Plaintiff pled that he "complied with or will comply with Alabama Code § 8-19-10(e)." (Doc. # 83 at ¶ 73). But, Plaintiff cannot comply with the ADTPA's demand requirement after filing this action. Further, Plaintiff bears the burden of showing that PenFed falls within one of the two exceptions such that no demand is required. *Sheehan*, 572 So. 2d at 1213. He has not done so. Thus, Plaintiff's ADTPA claim must also be dismissed for failure to comply with the demand requirement.

### 3. Count 11 – UCC Perfection and Title Handling Failures fails as a matter of law.

Alabama's version of the UCC, contained in Title 7 of the Code of Alabama, does not apply when perfecting a security interest in motor vehicles. Ala. Code § 7-9A-311 ("[T]he filing of a financing statement is not necessary or effective to perfect a security interest in property subject to . . . Chapter 8 or Chapter 20 of Title 32."). Rather, it is Title 32, Chapter 8 of the Code of Alabama that provides the exclusive method of perfecting a security interest in motor vehicles. *Id.* § 32-8-66; *Hill v. McGee*, 562 So. 2d 238 (Ala. 1990).

Under Alabama law, Title 32, Chapter 8 "does not create an independent cause of action for a party who claims to have been wronged by a secured party's failure to comply with the terms of the Act." *Harkness v. EZ Pawn Alabama, Inc.*, 724 So. 2d 32, 33 (Ala. Civ. App. 1998) (citing *Landmark Chevrolet, Inc. v. Central Bank of the South*, 611 So. 2d 1043, 1044 n.1 (Ala. 1992); *Trailmobile, Inc. v. Cook*, 540 So. 2d 683, 686 (Ala. 1988)). Because there is no private right of action under Alabama's version of the UCC for failure to perfect a lien, Plaintiff's claim for "UCC Perfection and Title Handling Failures" against PenFed fails as a matter of law.

### 4. Count 14 – Declaratory Judgment: Unenforceability of Promissory Note fails as a matter of law.

Under Alabama law, "[t]he elements of a valid contract include an offer and acceptance, consideration, and mutual assent or a meeting of the minds as to the terms essential to the formation of the contract." *Ex parte Grant*, 711 So. 2d 464, 464 (Ala. 1997) (citing *Strength v. Alabama Dep't of Finance, Div. of Risk Mgmt.*, 622 So. 2d 1283, 1289 (Ala. 1993); *Steiger v. Huntsville City Bd. of Ed.*, 653 So. 2d 975, 978 (Ala. 1995)). "Mutual assent is generally shown by a signature on a written contract, and, under Alabama law, a person who signs a contract is on notice of and bound by the terms of the contract." *Wells Fargo Bank, Nat'l Ass'n v. Choice Medicine: Hwy 53 Med. Ctr.*, 614 F. Supp. 3d 1022, 1026 (N.D. Ala. 2020) (citing *Bowen v. Security Pest Control,*

*Inc.*, 879 So. 2d 1139, 1142 (Ala. 2003); *Ex parte Leasecomm Corp.*, 879 So. 2d 1156, 1160 (Ala. 2003)).

Plaintiff argues that PenFed's "failure to sign or otherwise authenticate the Promissory Note raises enforceability issues under Alabama law." (Doc. # 83 at ¶ 101). But, Plaintiff misunderstands Alabama contract law. In Alabama, a promissory note must be signed only by the maker to be valid. Ala. Code § 7-3-104; Ala. Code § 7-3-401. Here, Plaintiff signed the promissory note (Doc. # 83-1 at 1) and is "on notice of and bound by the terms of the contract." *Wells Fargo Bank, Nat'l Ass'n*, 614 F. Supp. 3d at 1026; *see* Ala. Code § 7-3-401. PenFed was not required to sign the promissory note. Thus, Plaintiff's Declaratory Judgment claim against PenFed fails as a matter of law.

### B.    Open Lending's Motion to Dismiss (Doc. # 87).

Plaintiff asserts two claims against Open Lending: Count 12 – Negligence/Wantonness and Count 13 – Failure to Provide Notice of Loan Transfer. (Doc. # 83 at ¶¶ 86-98). After careful review and for the reasons discussed below, both of his claims against Open Lending are due to be dismissed.

#### 1.    Count 12 – Negligence/Wantonness is due to be dismissed for failure to state a claim.

Under Alabama law, "[t]o establish negligence, the plaintiff must prove: (1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury." *Lemley v. Wilson*, 178 So. 3d 834, 841 (Ala. 2015) (citing *Albert v. Hsu*, 602 So.2d 895, 897 (Ala. 1992). And "[t]o establish wantonness, the plaintiff must prove that the defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty. To be actionable, that act or omission must proximately cause the injury of

which the plaintiff complains." *Lemley*, 178 So. 3d at 841-42 (citing *Smith v. Davis*, 599 So.2d 586 (Ala. 1992)).

Plaintiff's allegations against Open Lending are threadbare, at best. Plaintiff claims that Open Lending "[p]rovides loan risk and analytics services to lenders" (Doc. # 83 at ¶¶ 12, 86) and participated in "auto financing programs involving Plaintiff's 2016 Honda Civic" through underwriting, "evaluating loan risk, guaranteeing the loan, and providing analytics essential to the approval and funding of refinancing" (*Id.* at ¶¶ 86-87). Plaintiff claims that at some point, Open Lending "acquired or participated in rights connected to Plaintiff's vehicle refinancing loan and collateral, including providing risk-based guarantees and assuming monetary interests in the transaction." (*Id.* at ¶ 94). But, "despite acquiring or participating in these rights," Open Lending did not "provide Plaintiff with written notice of its interest in the loan or of any intended repossession, as required by Alabama law." (*Id.* at ¶ 95).

Plaintiff claims that Open Lending owed him a duty to "exercise reasonable care in ensuring its loan participation and risk-based services complied with Alabama's Consumer Protection laws, including requirements governing lien protection, notice, and repossession" (*Id.* at ¶ 88) and that it "breached this duty by endorsing, approving, and participating in the refinancing despite unresolved lien defects, and by failing to ensure that repossession actions taken with its participation complied" with various sections of the UCC as adopted by Alabama in the Code of Alabama, Title 7 (*Id.* at ¶ 89).

As an initial matter, whether a legal duty exists is a question of law. *Rose v. Miller & Co.*, 432 So.2d 1237, 1238 (Ala. 1983). Plaintiff has alleged that Open Lending provides "services to lenders." (Doc. # 83 at ¶¶ 12, 86). But, Plaintiff has not alleged any relationship, conversation, or communication with Open Lending that could create a duty to Plaintiff in the refinancing of the

loan on his vehicle. Further, claims for negligence or wantonness in lender-borrower relationships are disfavored under Alabama law. *See, e.g.*, *Flying J Fish Farm v. Peoples Bank of Greensboro*, 12 So. 3d 1185, 1193-96 (Ala. 2008) (holding that lender owed no duty to use reasonable care in ensuring that borrower could repay loan); *Armstrong Bus. Servs., Inc. v. AmSouth Bank*, 817 So. 2d 665, 679-82 (Ala. 2001) (holding that lender had no duty to process borrower's loan request or lend borrower money); *Buckentin v. SunTrust Mortg. Corp.*, 928 F. Supp. 2d 1273, 1290 (N.D. Ala. 2013) (holding that Alabama law does not recognize a tort claim against lender for purported breach of mortgage agreement). Thus, the court concludes that Plaintiff has not plausibly alleged that Open Lending owed him any duty, and Plaintiff's negligence/wantonness claim against Open Lending is due to be dismissed for failure to state a claim.

> **2.    Count 13 – Failure to Provide Notice of Loan Transfer is due to be dismissed for failure to state a claim.**

Plaintiff claims that "[u]nder Alabama Code §§ 7-9A-210 and 7-9A-611, a debtor is entitled to receive notice of assignment, transfer, or acquisition of rights in a loan or collateral, and notice prior to repossession." (Doc. # 83 at ¶ 93). According to Plaintiff, Open Lending acquired rights connected to his vehicle and refinancing but did not provide Plaintiff with written notice of its interest in the loan or of any intended repossession. (*Id.* at ¶¶ 94-95).

Plaintiff's citations to the Alabama Code do not support his claims. Alabama Code § 7-9A-210 provides that a debtor may *request* an accounting, a list of collateral, or a statement of account, not that the secured party must provide notice automatically without receiving a request. And, while Alabama Code § 7-9A-611 does provide that a secured party must send notification of *disposition* to the debtor, Plaintiff has not pled that Open Lending is the secured party to the loan on his vehicle or that Open Lending "disposed" of his vehicle. Further, under § 7-9A-611, "[a]lthough notice must be sent prior to disposition of repossessed collateral, there is no

requirement that notice be sent prior to repossession." *Low Cost Cars, Inc. v. Munn*, 399 So. 2d 277, 280 (Ala. 1981) (citations omitted). Thus, Plaintiff's claim for failure to provide notice of loan transfer is due to be dismissed as a matter of law.

### C.    Santander's Motion to Dismiss (Doc. # 88).

Plaintiff brought three claims against Santander: Count 4 – Breach of Contract, Count 8 – Violation of ADTPA, and Count 15 – Declaratory Judgment: Lack of Valid Contracts. (Doc. # 83 at ¶¶ 42-47, 63-67, 104-107). After careful review and for the reasons discussed below, all claims against Santander are due to be dismissed.

### 1.    Count 4 – Breach of Contract is due to be dismissed for failure to state a claim.

As previously stated, under Alabama law, the elements of a breach of contract claim are "(1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Reynolds Metals Co*, 825 So. 2d at 105.

Plaintiff alleges that Santander "failed to execute and file a lien release with the Alabama Department of Revenue, leaving its lien of record." (Doc. # 83 at ¶ 45). Even treating this allegation as true, the court cannot identify any language in Plaintiff's contract with Santander that would require Santander to release its lien on Plaintiff's vehicle.[3] (Doc. # 88-1). As Plaintiff cannot tie his allegations to any specific contractual provision, Plaintiff cannot allege Santander's nonperformance under the contract. *Reynolds Metals Co*, 825 So. 2d at 105; *see Burgess v. Relig. Tech. Ctr., Inc.*, 600 F. App'x 657, 664 (11th Cir. 2015) (unpublished). Thus, Plaintiff's claim for breach of contract against Santander is due to be dismissed for failure to state a claim.

---

[3] "[T]he court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Here, Plaintiff's contract with Santander is central to his breach of contract claim, and Plaintiff does not dispute this is the contract at issue.

2.    **Count 8 – Violation of ADTPA is due to be dismissed as a matter of law and for failure to state a claim.**

As the court also explained above, a promissory note is not a good or service within the meaning of the ADTPA, and thus Plaintiff's ADTPA claim against Santander fails as a matter of law. *See Deerman*, 955 F. Supp. at 1399-1400.

Further, even if the ADTPA did apply to the transaction at issue here, claims under the ADTPA are based in fraud and thus must comply with Rule 9(b)'s particularity in pleading requirement. *Kornegay*, 614 F. Supp. 3d at 1036. Here, Plaintiff merely alleges that Santander "represented that it would release its lien upon payoff or refinancing but failed to do so" (Doc. # 83 at ¶ 63), "Plaintiff [asserts he] relied on this representation in proceeding with the refinance" (*Id.* at ¶ 64), and that he "suffered damages when conflicting liens contributed to wrongful repossession" (*Id.* at ¶ 65). These allegations do not set forth precisely what statements were made and where, the time and place of each such statement, the person responsible for making any statements, the content of such statements and the way they mislead Plaintiff, or what Santander allegedly obtained because of its alleged fraud. *Ziemba*, 256 F.3d at 1202. Thus, because Plaintiff has not satisfied Rule 9(b), Plaintiff has not stated a claim for violation of ADTPA against Santander.

Nor has Plaintiff complied with the ADTPA's demand requirement. Under the ADTPA, a plaintiff must communicate a written demand to proposed respondent at least 15 days prior to the filing of any action. Ala. Code § 8-19-10(e); *Holmes*, 2015 WL 7252662, at *2 (finding that a pre-suit demand is "a condition precedent to filing a suit under the ADTPA"). Here, Plaintiff pled that he "complied with or will comply with Alabama Code § 8-19-10(e)." (Doc. # 83 at ¶ 66). Plaintiff cannot comply with the ADTPA's demand requirement after filing this action. Further, Plaintiff bears the burden of showing that Santander falls within one of the two exceptions such that no

demand is required. *Sheehan*, 572 So. 2d at 1213. Plaintiff has not done so. Thus, his ADTPA claim must also be dismissed for failure to comply with the demand requirement.

### 3.    Count 15 – Declaratory Judgment: Plaintiff's Lack of Valid Contracts claim is due to be dismissed for failure to state a claim.

Under Alabama law, "[t]he elements of a valid contract include an offer and acceptance, consideration, and mutual assent or a meeting of the minds as to the terms essential to the formation of the contract." *Ex parte Grant*, 711 So. 2d at 464. "Mutual assent is generally shown by a signature on a written contract, and, under Alabama law, a person who signs a contract is on notice of and bound by the terms of the contract." *Wells Fargo Bank, Nat'l Ass'n*, 614 F. Supp. 3d at 1026.

While Plaintiff alleges that he "never received or signed any binding loan contract with [Santander] obligating him to make monthly payments" (Doc. # 83 at ¶ 105), Plaintiff also admits that he "purchased the [vehicle] from Vroom under a retail installment contract, with financing provided by Santander" and that he "made [m]onthly payments under the contract." (*Id.* at ¶¶ 9, 16). Further, Plaintiff actually signed the contract in question – three times, to be exact. (Doc. # 88-1 at 4, 7). Because he signed the contract, Plaintiff is "on notice of and bound by the terms of the contract." *Wells Fargo Bank, Nat'l Ass'n*, 614 F. Supp. 3d at 1026. Thus, Plaintiff's declaratory judgment claim against Santander fails as a matter of law.

### D.    Vroom's Motion to Dismiss (Doc. # 89).

Plaintiff brought two claims against Vroom: Count 3 – Breach of Contract and Count 7 – Violation of ADTPA. (Doc. # 83 at ¶¶ 37-41, 59-62). After careful review and for the reasons discussed below, all claims against Vroom are due to be dismissed.

**1.    Count 3 – Breach of Contract is due to be dismissed for failure to state a claim.**

As previously noted, under Alabama law, the elements of a breach of contract claim are "(1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Reynolds Metals Co*, 825 So. 2d at 105.

Plaintiff claims that Vroom "promised to properly complete sales paperwork, including title transfer and lien documentation, as required by Alabama law governing vehicle sales." (Doc. # 83 at ¶ 38). But, Plaintiff has not pointed to any provision in his contract with Vroom that shows Vroom promised to do so, and the court cannot locate language in the agreement that creates such an obligation.[4] (*See* Doc. # 89-1). As Plaintiff cannot tie his allegations to any specific contractual provision, Plaintiff cannot allege Vroom's nonperformance breached the contract. *Reynolds Metals Co*, 825 So. 2d at 105; *see Burgess*, 600 F. App'x at 664. Thus, Plaintiff has not stated a claim for breach of contract against Vroom.

**2.    Count 7 – Violation of ADTPA is due to be dismissed as a matter of law and for failure to state a claim.**

First, and again, Plaintiff has not complied with the ADTPA's demand requirement. Under the ADTPA, a plaintiff must communicate a written demand to proposed respondent at least 15 days prior to the filing of any action. Ala. Code § 8-19-10(e); *Holmes*, 2015 WL 7252662, at *2 (finding that a pre-suit demand is "a condition precedent to filing a suit under the ADTPA").

Here, Plaintiff pled that he "complied with or will comply with the written demand requirements of Alabama Code § 8-19-10(e)." (Doc. # 83 at ¶ 61). While Plaintiff sent a pre-suit demand letter to Vroom's counsel on September 10, 2025 (Doc. # 89-2), Plaintiff cannot comply

---

[4] Again, "the court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed." *Day*, 400 F.3d at 1276. Here, Plaintiff's contract with Vroom is central to his breach of contract claim, and Plaintiff does not dispute the contract.

with the ADTPA's demand requirement *after* filing this action. Plaintiff bears the burden of showing that Vroom falls within one of the two exceptions such that no demand is required. *Sheehan*, 572 So. 2d at 1213. He has not done so. Thus, Plaintiff's ADTPA claim must also be dismissed for failure to comply with the demand requirement.

Second, Plaintiff's ADTPA claim does not comply with Rule 9(b)'s particularity requirement. *Kornegay*, 614 F. Supp. 3d at 1036. Here, Plaintiff merely alleges that Plaintiff "relied on [Vroom's] misrepresentations in proceeding with the purchase" of his vehicle (Doc. # 83 at ¶ 59) and that he "suffered damages when the vehicle was wrongfully repossessed" (*Id.* at ¶ 60). Yet, Plaintiff does not explain what Vroom's alleged misrepresentations were. (*See generally id.*). These allegations do not set forth precisely what statements were made and where, the time and place of each such statement, the person responsible for any statement, the content of such statements, the way they mislead Plaintiff, or what Vroom allegedly obtained because of its alleged fraud. *Ziemba*, 256 F.3d at 1202. Thus, because Plaintiff has not satisfied Rule 9(b), Plaintiff has not stated a claim for violation of ADTPA against Vroom.

**E.    AUTOPAY's Motion to Dismiss (Doc. # 90).**

Plaintiff brought two claims against AUTOPAY: Count 6 – Breach of Contract and Count 10 – Violation of ADTPA. (Doc. # 83 at ¶¶ 54-58, 75-79). After careful review and for the reasons discussed below, both claims against AUTOPAY are due to be dismissed.

**1.    Count 6 – Breach of Contract is due to be dismissed for failure to state a claim.**

Again, under Alabama law, the elements of a breach of contract claim are "(1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Reynolds Metals Co*, 825 So. 2d at 105.

Plaintiff claims AUTOPAY "represented that it would coordinate financing in compliance with consumer protection standards and ensure proper title/lien documentation" and that AUTOPAY's failure to do so left "Plaintiff's title rights unprotected." (Doc. # 83 at ¶¶ 55-56). But, Plaintiff has not pointed to any contract that exists between Plaintiff and AUTOPAY, much less a contract provision that shows AUTOPAY promised to do what Plaintiff claims. As Plaintiff cannot tie his allegations to any specific contractual provision or any contract generally, Plaintiff cannot allege AUTOPAY's nonperformance under the contract. *Reynolds Metals Co*, 825 So. 2d at 105; *see Burgess*, 600 F. App'x at 664. Thus, Plaintiff has not stated a claim for breach of contract against AUTOPAY.

### 2.    Count 10 – Violation of ADTPA is due to be dismissed as a matter of law and for failure to state a claim.

First, Plaintiff has not complied with the ADTPA's demand requirement. Under the ADTPA, a plaintiff must communicate a written demand to proposed respondent at least 15 days prior to the filing of any action. Ala. Code § 8-19-10(e); *Holmes*, 2015 WL 7252662, at *2 (finding that a pre-suit demand is "a condition precedent to filing a suit under the ADTPA").

Here, Plaintiff pled that he "complied with or will comply with Alabama Code § 8-19-10(e)." (Doc. # 83 at ¶ 66). Plaintiff cannot comply with the ADTPA's demand requirement after filing this action. Plaintiff bears the burden of showing that AUTOPAY falls within one of the two exceptions such that no demand is required. *Sheehan*, 572 So. 2d at 1213. He has not done so. Thus, Plaintiff's ADTPA claim must also be dismissed for failure to comply with the demand requirement.

Second, Plaintiff's ADTPA claim does not comply with Rule 9(b)'s pleading with particularity requirement. *Kornegay*, 614 F. Supp. 3d at 1036. Here, Plaintiff merely alleges that AUTOPAY "represented that it would arrange refinancing with clear and compliant terms but

failed to ensure lien filings and disclosures were handled" (Doc. # 83 at ¶ 75), "Plaintiff relied on this representation" and believed "the refinancing would protect his title rights" (*Id.* at ¶ 76), and that he "suffered damages when the vehicle was wrongfully repossessed" (*Id.* at ¶ 77). These allegations do not set forth precisely what statements were made and where, the time and place of each such statement, the person responsible for making any statements, the content of such statements, the way they mislead Plaintiff, or what the AUTOPAY allegedly obtained because of its alleged fraud. *Ziemba*, 256 F.3d at 1202. Thus, because Plaintiff has not satisfied Rule 9(b), Plaintiff has not stated a claim for violation of ADTPA against AUTOPAY.

### F.    LPS's Motion to Dismiss (Doc. # 91).

Plaintiff brought three claims against LPS: Count 1 – Wrongful Detention/Replevin, Count 2 – Conversion, and Count 16 – Violation of the ADTPA. (Doc. # 83 at ¶¶ 29-36, 108-114). After careful review and for the reasons discussed below, each of those claims against LPS is due to be dismissed.

### 1.    Count 1 – Wrongful Detention is due to be dismissed for failure to state a claim.

While Plaintiff styles his claim as a wrongful detention/replevin claim, the court construes the claim as a detinue claim. Under Alabama law, "the plaintiff has the burden of proof [in a detinue action] to show that the plaintiff had legal title to the property or right to possession at the time of the action and that the defendant had wrongfully taken possession of the property." *Thackston v. Key*, 92 So. 3d 788, 791 (Ala. Civ. App. 2012) (quoting *Heathcock v. Hadley*, 380 So. 2d 915, 916 (Ala. Civ. App. 1980)); *see also Murray v. Dempsey*, 521 So. 2d 1345, 1345-46 (Ala. Civ. App. 1988) (finding that claimant in detinue case bears burden of proof). It follows that to state a detinue claim, Plaintiff must allege that he had legal title to or the right to possess the vehicle.

Plaintiff claims that he retained the right to possess the vehicle because "statutory and contractual prerequisites for repossession were not satisfied," (Doc. # 83 at ¶ 22), and that LPS "continued to withhold the vehicle from Plaintiff without lawful justification" (*Id.* at ¶ 30). The court notes that Plaintiff does not explain what these alleged "statutory and contractual prerequisites" are, or why LPS's repossession of the vehicle was unlawful.

Regardless, Plaintiff's own filings demonstrate that he was in default under the PenFed note. (Doc. # 1-2 at 58). And, Alabama law is clear that when a debtor defaults, a secured party "may take possession of the collateral." Ala. Code § 7-9A-609. Because even his own filings show that he defaulted on the PenFed note, Plaintiff cannot allege that he had legal title to or the right to possess the vehicle. Thus, Plaintiff cannot state a detinue claim against LPS.

### 2.    Count 2 – Conversion is due to be dismissed for failure to state a claim.

"The gist of the action for conversion is the wrongful exercise of dominion over property to the exclusion of or in defiance of a plaintiff's rights, where the plaintiff has a general or special title to the property or the immediate right to possession." *Riscorp, Inc. v. Norman*, 915 So. 2d 1142, 1152-53 (Ala. 2005) (alteration in original) (citing *Greene County Bd. of Educ. v. Bailey*, 586 So.2d 893, 898 (Ala. 1991); *Ex parte SouthTrust Bank of Alabama, N.A.*, 523 So.2d 407 (Ala. 1988)).

First, Plaintiff's conversion claim fails for the same reason as his detinue claim – Plaintiff's own filings demonstrate that he was in default under the PenFed note. (Doc. # 1-2 at 58). And, Alabama law is clear that when a debtor defaults, a secured party "may take possession of the collateral." Ala. Code § 7-9A-609. Because he defaulted on the PenFed note, Plaintiff cannot allege that he had legal title to or the right to possess the vehicle. Thus, Plaintiff cannot state a claim for conversion.

Plaintiff also claims that when LPS seized the vehicle "without authority or consent," LPS "intentionally exercised dominion and control over the vehicle inconsistent with Plaintiff's ownership rights." (Doc. # 83 at ¶ 34). But, again, Plaintiff's own filings demonstrate that he consented to the repossession of his vehicle if he defaulted on the loan. The PenFed note is clear and unambiguous: Plaintiff agreed "if [Plaintiff is] in default, [PenFed] can take the [vehicle]." (Doc. # 83-1 at 2).

Finally, Plaintiff claims that LPS was required to give him notice before repossessing his vehicle. But, such notice is not required by either Alabama law or the four corners of the PenFed note. Rather, the note makes plain that Plaintiff explicitly agreed that if he defaulted on his loan, he would deliver the collateral to PenFed, and if he did not deliver the collateral, PenFed could "take the collateral without giving [Plaintiff] advanced notice." (Doc. # 83-1 at 2). For all these reasons, Plaintiff cannot state a conversion claim against LPS.

### 3. Count 16 – Violation of ADTPA is due to be dismissed as a matter of law and for failure to state a claim.

First, Plaintiff has not complied with the ADTPA's demand requirement. Under the ADTPA, a plaintiff must communicate a written demand to any proposed respondent at least fifteen days before filing any action. Ala. Code § 8-19-10(e); *Holmes*, 2015 WL 7252662, at *2 (holding that a pre-suit demand is "a condition precedent to filing a suit under the ADTPA").

Plaintiff's Second Amended Complaint, which first contained an ADTPA claim, was filed on September 12, 2025. (Doc. # 83 at 2, 11). While Plaintiff sent a pre-suit demand letter to LPS counsel on September 10, 2025 (Doc. # 91-1), Plaintiff's letter did not comply with the 15-day rule. Further, Plaintiff bears the burden of showing that LPS falls within one of the two exceptions such that no demand is required. *Sheehan*, 572 So. 2d at 1213. He has not done so. Thus, Plaintiff's ADTPA claim must also be dismissed for failure to comply with the 15-day demand requirement.

Second, Plaintiff's ADTPA does not comply with Rule 9(b)'s pleading with particularity requirement. *Kornegay*, 614 F. Supp. 3d at 1036. Here, Plaintiff merely alleges that LPS "represented, implicitly or explicitly, that it had lawful authority to seize the vehicle, when in fact it did not." (Doc. # 83 at ¶¶ 110-12). These allegations do not set forth precisely what statements were made and where, the time and place of each such statement, the person responsible for making it, the content of any statement, the way it mislead Plaintiff, or what LPS allegedly obtained because of its alleged fraud. *Ziemba*, 256 F.3d at 1202. Thus, because Plaintiff has not satisfied Rule 9(b), Plaintiff has not stated a claim for violation of ADTPA against LPS.

**G.    Any Opportunity Given to Plaintiff to Further Amend the Pleadings Extended to Plaintiffs Would be Futile.**

"Where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district judge dismisses the action with prejudice." *Cornelius v. Bank of Am., NA*, 585 F. App'x 996, 1000 (11th Cir. 2014) (citing Bank v. Pitt, 928 F.2d 1108, 1112 (11th Cir. 1991)). And "[w]hile a pro se litigant generally must be given at least one opportunity to amend his complaint, a district judge need not allow an amendment where amendment would be futile." *Id.* (citing *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) (per curiam)).

This is Plaintiff's third pleading. That is, the court is addressing Plaintiff's Second Amended Complaint. Despite finding that Plaintiff's First Amended Complaint was an impermissible shotgun pleading, the court allowed Plaintiff another opportunity to amend his complaint to state a claim against Defendants. In doing so, the court ordered Plaintiff to serve Defendants with a draft of the Second Amended Complaint before filing it with the court so Defendants could give Plaintiff feedback regarding whether the draft second amended complaint complied with the pleading requirements of the Federal Rules. (Doc. # 63 at 2-3). Plaintiff

circulated a draft of the Second Amended Complaint to all Defendants, and Defendants gave Plaintiff feedback as directed. (Docs. # 83-2, 84-1, 87-1, 88 at ¶ 20, 89 at ¶ 18, 90 at ¶ 17, 91 at ¶ 17).

Despite the court giving Plaintiff the chance to amend his complaint a second time, and to benefit from input by Defendants as to how to properly plead his claims, Plaintiff's Second Amended Complaint still fails to state any plausible claim against any Defendant. Thus, this case is one of the rare few in which any further amendment of Plaintiff's complaint would be futile. *See Cockrell v. Sparks*, 510 F.3d at 1310 ("Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant."). Thus, Plaintiff's Second Amended Complaint is due to be dismissed without leave to further amend.

## V.    Conclusion

For the foregoing reasons, Defendants' Motions to Dismiss (Docs. # 84, 87, 88, 89, 90, 91) are due to be granted, and all claims against all Defendants are dismissed with prejudice. A separate order consistent with this memorandum opinion will be entered.

**DONE** and **ORDERED** this October 29, 2025.

**R. DAVID PROCTOR**
CHIEF U.S. DISTRICT JUDGE